1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9

Julio Cesar Morales,

No. CV-14-01729-PHX-DJH (BSB)

10

Petitioner,

**REPORT AND RECOMMENDATION**

11

v.

12

Charles L. Ryan, et al.,

13

Respondents.

14

15      Petitioner Julio Cesar Morales has filed a Petition for Writ of Habeas Corpus,

16  pursuant to 28 U.S.C. § 2254, raising two claims of ineffective assistance of counsel.

17  (Doc. 1.)  Respondents argue that Petitioner is not entitled to habeas corpus relief because

18  he has not shown that the state court's resolution of these claims was based on an

19  unreasonable determination of the facts, or that it was contrary to, or based on an

20  unreasonable determination of federal law.  (Doc. 11.)  Petitioner has filed a reply in

21  support of his Petition.  (Doc. 12.)  For the reasons below, the Court recommends that the

22  Petition be denied.

23  **I.      Procedural Background**

24      **A.      Charges, Guilty Plea, and Sentencing**

25      In June 2010, Petitioner was arrested during a traffic stop.  (Doc. 11, Ex. K at 1.)

26  Petitioner was a passenger in a car that Ashley Botello was driving; the car had invalid

27  license plates.  (*Id.*)  Botello consented to a search of the car, during which police officers

28  discovered approximately forty-eight pounds of marijuana.  (*Id.*)  Botello and Petitioner

admitted knowing of the marijuana and that it was being transported from Douglas, Arizona to Phoenix, Arizona.  (*Id.*)  Petitioner stated that he was being paid $2,000.00 to transport the marijuana.  (*Id.*)

Petitioner was indicted in the Pinal County Superior Court on one count of transportation of marijuana for sale (Count One), and one count of possession of marijuana for sale (Count Two), both class two felonies.  (Doc. 11, Ex. A.)  Petitioner was initially represented by Kent Volkmer.  (Doc. 11, Ex. K at 1.)  However, he was later represented by David Gregan, and then Matthew Brown.  (Doc. 11, Ex. J at 3-4.)  While represented by Brown, on October 11, 2011, Petitioner pleaded guilty to possession of marijuana for sale pursuant to a plea agreement.  (Doc. 11, Ex. F.)  In exchange for Petitioner's guilty plea, the State agreed to dismiss Count One, allegations of prior felony convictions, and allegations that Petitioner committed the offense when he was on parole.  (Doc. 11, Ex. H at 1-2.)  The plea agreement stipulated to a sentence of eight years' imprisonment.  (*Id.* at 1.)  At the change of plea hearing, the trial court found that Petitioner's guilty plea was knowing, intelligent, and voluntary, and was not the result of force or threats.  (Doc. 11, Ex. F at 15-16.)  On November 7, 2011, the trial court sentenced Petitioner to eight years' imprisonment in accordance with the plea agreement.  (Doc. 11, Ex. G at 7-8.)

### B.    Post-Conviction Proceedings

On January 26, 2012, Petitioner filed a notice of post-conviction relief in the trial court.[1]   (Doc. 11, Ex. I.)  On September 13, 2012, Petitioner, though counsel, filed a petition arguing that trial counsel Volkmer provided ineffective assistance by failing to correctly convey the terms of the plea offers.  (Doc. 11, Ex. J at 6-7.)  Petitioner also argued that his second attorney, Gregan, was ineffective for advising Petitioner to delay

---

[1]  By pleading guilty, Petitioner waived his right to a direct appeal under Arizona law.  *See* Ariz. Rev. Stat. § 13-4033(B).  Petitioner, however, retained the right to seek review in an "of-right" proceeding pursuant to Rule 32.  *See* Ariz. R. Crim. P. 32.1 and 32.4.

accepting a plea offer that included a term of up to 3.5 years' imprisonment and by promising Petitioner that he could obtain a more favorable plea offer. (*Id.* at 7.)

### 1.   Evidentiary Hearing

On January 18, 2013, the trial court held an evidentiary hearing to consider Petitioner's claims. (Doc. 11, Ex. C.) During the hearing, Petitioner, his girlfriend Stephanie Arvayo, and the prosecutors and defense attorneys who participated in Petitioner's criminal case testified. (*Id.*) Volkmer testified that during August and September 2010, he and prosecutor Mark Bennink discussed a possible guilty plea offer through email. (*Id.* at 13, 171-72.) Bennink testified that he initially offered a plea in Early Disposition Court for probation. (*Id.* at 9-10.) However, Bennink withdrew the offer after Volkmer informed him that Petitioner's prior convictions disqualified him from this offer. (*Id.* at 9-10.)

Bennink later extended a short-term offer for Petitioner to plead guilty to a class four felony with a sentence capped at 2.5 years' imprisonment. (*Id.* at 11, 175.) Bennink made this offer orally and did not put it in writing. (*Id.* at 24, 175.) Volkmer testified that he could not remember if he conveyed this plea offer to Petitioner. (*Id.* at 175, 192.) He explained that his file included general references such as "reviewed pleas, jail visit," but did not specifically state whether he told Petitioner about the plea offer for 2.5 years' imprisonment. (*Id.*) Volkmer testified that his "practice" was "to convey an offer . . . once it [was] made." (*Id.* at 183.)

Petitioner testified that he met with Volkmer on August 11, 2010 and that Volkmer told him about "the plea." (*Id.* at 145.) Later that day, Petitioner called his mother on a monitored jail phone. (*Id.* at 146-47.) The recording of the telephone call, which was admitted as an exhibit at the evidentiary hearing (Doc. 11, Ex. C at 50-51), includes the following exchange between Petitioner and his mother.

> [Petitioner:]  The attorney came with one of those for two years.
>
> [Mother:]  What did he tell you?
>
> * * *

[Petitioner:]  He came with one for — for two years, seems like he wants me to do two years.

[Mother:]  They want you to . . . but no, but you haven't had a hearing [yet] Julio.

[Petitioner:]  Ma, but they give me a plea mom.  It's one (inaudible) they make you a plea and I wasn't going to sign it but I am going to sign it because you don't have money to get me out at any rate.

[Mother:]  I don't know, don't give up, Morales.  What do you mean you're going to sign, man, don't give up.

* * *

[Mother:]  But when do you have to sign it?

* * *

[Petitioner:]  Ma, but I have court this, this Monday, mom.  This Monday is when I have to sign.  This Monday.

[Mother:]  Why this Monday?  Before court?

[Petitioner:]  I am going to court on Monday, mom . . . . [I]f I don't sign, then I am going to trial . .

[Petitioner:]  So I don't sign then, mom?

[Mother]:  Don't sign, son.  Wait until Monday and don't worry, son.

* * *

[Petitioner]:  I told my attorney today . . . you wanted to get me a private attorney.

(Doc. 11, Ex. S at 3-6.)  The first pretrial conference was Monday, August 16, 2010. (Doc. 11, Ex. C at 25.)  Because Petitioner did not accept the plea offer, Bennink withdrew it.  (*Id.* at 24.)

Bennink extended another plea offer for a stipulated, presumptive sentence of 4.5 years' imprisonment.  (*Id.* at 21, 173.)  Petitioner believed that his co-defendant Botello had accepted a plea offer that included a two-year prison sentence.  (*Id.* at 125-26, 132.) Volkmer testified that Petitioner told him that he would not accept an offer that included a prison sentence longer than one year.  (*Id.* at 184, 190-91, 195.)  On August 18, 2010,

- 4 -

Volkmer asked Bennink if he would consider offering a plea that included a sentence of one to 1.5 years' imprisonment.  (*Id.* at 174; Doc. 11, Ex. D.)  On September 22, 2010, Bennink presented a modified, written plea offer.  (Doc. 11, Ex. C at 10 at 25, 173, 185.)  The plea offer provided that Petitioner would plead guilty to attempted possession of over four pounds of marijuana for sale, a class three felony, with a prison term capped at the presumptive 3.5 year sentence (the 3.5-year offer).  (Doc. 11, Ex. E.)   The plea offer stated that it expired at the second pretrial conference.  (*Id.*)  However, Bennink testified that he and other prosecutors were "lenient" about such deadlines and sometimes reopened expired offers if the defendant accepted after the expiration date.  (Doc. 11, Ex. C at 25.)  Petitioner's third attorney, Matthew Brown, also testified that prosecutors in Pinal County often made "open-ended" plea offers and if a plea offer had an expiration date, if "things were still being worked out," the prosecutors would allow a defendant to enter a plea after the expiration date.  (*Id. at* 60-61.)  Because the second pretrial conference took place before Bennink presented the September 22, 2010 plea offer, Bennink testified that the language about the plea offer's expiration date was "standard" language that he included in his plea offers and that the deadline in Petitioner's case appeared "more flexible."  (*Id.* at 25.)

Although the written plea offer described the prison term as capped at 3.5 years, Volkmer testified that he could not remember whether he told Petitioner that the prison term was capped or stipulated.  (*Id.* at 174-75.)  Petitioner testified that Volkmer never showed him a written plea offer and that Volkmer described the plea offer as including a prison term of "three-and-a-half" without further explanation.  (*Id.* at 124.)  Petitioner continued asking about the possibility of probation.  (*Id.* at 124, 129.)  Petitioner testified that Volkmer told him it "wasn't getting better than three-and-a-half" and that he told him to accept the plea offer.  (*Id.* at 129, 142.)  Petitioner stated that "that's when he told [Volkmer he was] looking into hiring a new lawyer."  (*Id.*)  Petitioner also testified that Volkmer told him that the plea offer did not have an expiration date, but that he should

not "take too long."  (*Id.* at 124.)  Volkmer testified that Petitioner told him if could not get him a better deal, he would hire another lawyer who could.  (*Id.* at 129, 178, 191.)

Petitioner testified that when he was in jail, he met an inmate who was represented by private attorney David Gregan and received probation for charges similar to Petitioner's.  (*Id.* at 126-27.)  Sometime between fall 2010 and early 2011, Petitioner and his girlfriend Arvayo met with Gregan.  (*Id.* at 69, 77, 128.)  Gregan testified that Petitioner was unhappy with the 3.5-year offer.  (*Id.* at 82, 83.)  Gregan testified that he had practiced in Pinal County for "a number of years," and based on the charges and the prosecutor, he believed he could obtain a more favorable plea offer.  (*Id.* at 70.)  Petitioner testified that Gregan told him he thought Bennik was "lazy" and that he could get a more favorable offer from him.  (*Id.* at 139.)  Gregan testified that he did not "promise" that he could obtain a better offer.  (*Id.* at 83-85.)  He explained that he "usually" tells his clients, "I can't promise results, all I can promise is effort . . . ."  (*Id.* at 85.)  On February 28, 2011, Gregan substituted as Petitioner's counsel.  (*Id.* at 77.)

Gregan testified that he told Petitioner to pursue a GED and get a job to improve his position during negotiations and sentencing.  (*Id.* at 71.)  He testified that "it was certainly possible" that he had told Petitioner he would continue the case to give Petitioner time develop his "track record."  (*Id.*)  The case was continued several times.  (*Id.* at 14.)  Gregan testified that he had trouble reaching Bennik by telephone.  (*Id.* at 72-73.)  Bennik agreed that Gregan left him at least one voice message to which he never responded.  (*Id.* at 14, 43.)  Gregan testified that he contacted Bennik by "hunting him down in court."  (*Id.* at 73.)

In March 2011, a trial date was set for July 26, 2011.  (*Id.* at 48-49, 71, 79.)  Because the date conflicted with Bennik's schedule, he had the case transferred to another prosecutor, Jill Sosin.  (*Id.* at 19, 39, 48.)  Sosin testified that Bennik discussed the history of the plea offers and that he indicated that "his view was that he would leave the plea [for up to 3.5 years' imprisonment] open until — I believe there was a time that Mr. Gregan and Defendant set the case for trial."  (*Id.* at 40.)  Sosin stated at that point

Gregan believed the plea offer had been rejected.  (*Id.*)  Gregan met with Sosin about accepting the "original" plea offer [for 3.5 years' imprisonment].  (*Id.* at 40, 42-43.)  Sosin told Gregan that she and Bennink had assumed that Petitioner had rejected the 3.5-year offer when Gregan set the case for trial and she refused to reinstate the offer.  (*Id.* at 43.)  Gregan testified that he did not recall the circumstances under which trial was set, other than it was set "suddenly."  (*Id.* at 72.)  Sosin testified that her practice was to "uphold the expiration date" of a plea offer.  (*Id.* at 41.)  Gregan tried to speak with Sosin's supervisor about reinstating the plea offer, but was unsuccessful.  (*Id.* at 76.)

Petitioner was unable to pay Gregan's fee for taking the case to trial and Gregan withdrew from the case on July 25, 2011.  (*Id.* at 49, 72.)  Matthew Brown was appointed to represent Petitioner.  (*Id.* at 52, 80.)  Gregan testified that he contacted Brown about the case and gave him his file.  (*Id.* at 80-81.)  Sosin then extended a plea offer for eight years' imprisonment.  (*Id.* at 47, 58.)  Brown testified that Petitioner indicated that previously he had been offered a better plea, which he rejected because he "believed he could get a better plea," and that he had not wanted to take the plea offer that was presented to him when Volkmer represented him.  (*Id.* at 64-65.)  Petitioner accepted the plea offer for eight years' imprisonment.  (*Id*. at 47.)

## 2.    The Trial Court's Ruling

After the evidentiary hearing, the trial court denied post-conviction relief on February 4, 2013.  (Doc. 11, Ex. K.)  In its minute entry, the court found that Volkmer's testimony and the recorded jail call showed that Volkmer accurately communicated both the 2.5-year and 3.5-year plea offers to Petitioner and that Petitioner refused to accept them.  (*Id.* at 3.)  Instead, Petitioner hired private counsel to obtain a better deal.  (*Id.*)  The court further held that Gregan's advice that Petitioner should delay accepting the 3.5-year offer was not a guarantee that Gregan would obtain a better plea offer, but a reasonable strategy designed to obtain a better offer from Bennink, whom Gregan reasonably believed would not want to take the case to trial.  (*Id.* at 3-4.)  The court further noted that Gregan's strategy no longer worked when Sosin took over the case.

(*Id.* at 3.)  However, Gregan had no reason to believe that Sosin would take over the case.  (*Id.*)   Additionally, Gregan and Bennink both testified that the practice was to leave a plea offer "on the table" after its expiration date and there was no evidence that, after Sosin took over the case, she gave Gregan any notice that the plea would be withdrawn.  (*Id.*)  The court stated that, although Sosin was not required to give Gregan such notice, her failure to do so deprived Gregan of the opportunity to notify Petitioner that if he did not accept the plea offer by a certain date, it would be withdrawn.  (*Id.*)   The court concluded that Volkmer's and Gregan's representation was not objectively unreasonable and, therefore, Petitioner had not established a claim of ineffective assistance of counsel.  (*Id.*)  On March 28, 2013, Petitioner filed a motion for reconsideration in the trial court.  (Doc. 11, Ex. L.)   On September 11, 2013, the court denied the motion.   (Doc. 11, Ex. M.)

### 3.      Higher State Court Review

On October 9, 2013, Petitioner filed a pro per petition for review in the Arizona Court of Appeals.  (Doc. 11, Ex. N.)   Petitioner asserted that the trial court abused its discretion by denying his two claims of ineffective assistance of counsel.  (*Id.* at 7.)  The appellate court granted review but denied relief in a memorandum decision dated February 10, 2014. (Doc. 11, Ex. O.)  The court agreed with the trial court's finding that Volkmer accurately communicated both plea offers to Petitioner — one for a two-year prison term and the other capped at 3.5 years' imprisonment.  (*Id.* at 2.)  The court also affirmed the trial court's finding that Gregan did not promise a better plea offer, but instead pursued a reasonable strategy of positioning his client for a better offer closer to trial.  (*Id.* at 3.)

On April 1, 2014, Petitioner filed a petition for review in the Arizona Supreme Court.  (Doc. 11, Ex. P.)  Petitioner challenged only the court of appeals' denial of the ineffective assistance claim against Gregan.  (*Id.*)  On April 8, 2014, Petitioner filed a petition for sentence reduction in the Arizona Supreme Court, in which he raised a claim

1    regarding Gregan's representation.  (Doc. 11, Ex. Q.)   On July 7, 2014, the Arizona

2    Supreme Court summarily denied both petitions.  (Doc. 11, Ex. R.)

3         **C.    Federal Petition for Writ of Habeas Corpus**

4              In his petition for writ of habeas corpus, Petitioner asserts the following two

5    grounds for relief: (1) trial counsel Gregan was ineffective for promising Petitioner a plea

6    offer that was more favorable than the "original offer of 3.5 years" (Ground One); and

7    (2) trial counsel Volkmer was ineffective for failing or refusing to accurately convey to

8    Petitioner the "original plea offer" in violation of the Sixth and Fourteenth Amendments.

9    (Doc. 1 at 6 – 7.)   Respondents argue that Petitioner is not entitled to habeas corpus relief

10   because his claims lack merit and he has not shown that the state court's rejection of

11   these claims was based on an unreasonable determination of the facts or that it was

12   contrary to, or based on an unreasonable application of, clearly established federal law.[2]

13   (Doc. 11 at 2, 9-10.)  Petitioner disputes Respondents' assertion.  (Doc. 12.)

14   **II.    Federal Review of Claims Adjudicated in State Court**

15              If a habeas petition includes a claim that was "adjudicated on the merits in State

16   court proceedings," federal court review is limited by § 2254(d).  Under § 2254(d)(1), a

17   federal court cannot grant habeas corpus relief unless the petitioner shows: (1) that the

18   state court's decision "was contrary to" federal law as clearly established in the holdings

19   of the United States Supreme Court at the time of the state court decision, *Greene v.*

20   *Fisher*, __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable

21   application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable

22   determination of the facts" based on the record before the state court.   28 U.S.C.

23   § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).  This standard is "difficult

24   to meet."  *Richter*, 562 U.S. at 102.  It is also a "highly deferential standard for evaluating

---

25

26   [2]  Respondents state that Petitioner properly exhausted his claims by presenting them to the Arizona Superior Court and the Arizona Court of Appeals.  (Doc. 11 at 7 n.5); *see Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005) (holding that to exhaust a claim, a petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing").  Thus, as Petitioner requests in his Reply (Doc. 12 at 2), the Court considers the merits of Petitioner's claims under the applicable standard of review.  *See* 28 U.S.C. § 2254(d).

27

28

state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted). When evaluating state court decisions on habeas review, federal courts look through summary or unexplained higher state court opinion to the last reasoned decision on the claim. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, the last reasoned state court decision addressing Petitioner's claims is the Arizona Court of Appeals' decision. (Doc. 11, Ex. O.)

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision. *Greene*, 132 S. Ct. at 44. A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination." *Id*.

Federal courts may also grant habeas corpus relief when the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process

unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014); *see Pollard v. Galaza*, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (the statutory presumption of correctness applies to findings by both trial courts and appellate courts). Additionally, state court findings of fact are presumed to be correct. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with "clear and convincing evidence." *Id.*

When a state court decision is deemed to be contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 631.

Here, because the pending petition alleges ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard applies and the court does not engage in a separate analysis applying the *Brecht* standard. *See Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000) (stating that the court "need not conduct harmless error review of *Strickland* violations under *Brecht* . . . because '[t]he; *Strickland* prejudice analysis is complete in itself; there is no place for additional harmless-error review.")).

## III.   Standards to Establish Ineffective Assistance of Counsel

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance."

*Id.* at 690.   When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.   *Id.*   "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   *Id.* at 689.   Review of counsel's performance is extremely limited.   Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.   *Id.*

To establish a Sixth Amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.   *Id.* at 691-92.   To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one.   *See id.* at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

The negotiation of a plea bargain is "'a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.'"   *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1406 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).   If counsel has misadvised a defendant about the law during a plea negotiation, or improperly coerced a defendant to accept a plea bargain, counsel's performance may be found deficient.   *See Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (counsel's erroneous legal advice about possibility of conviction that led to rejection of plea offer constituted deficient performance).   "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."   *Id.* at 1387.

1    When a petitioner has pleaded guilty, to satisfy *Strickland's* prejudice prong he

2    must show that "there is a reasonable probability that, but for counsel's errors, he would

3    not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

4    U.S. 52, 59 (1985) (citations omitted).   To show that prejudice resulted from the

5    ineffective assistance of counsel "where a plea offer has lapsed or been rejected because

6    of counsel's deficient performance, [a petitioner] must demonstrate a reasonable

7    probability" that (1) he "would have accepted the earlier plea offer," and (2) "the plea

8    would have been entered without the prosecution canceling it or the trial court refusing to

9    accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132

10   S. Ct. at 1409.

11   **IV.    Petitioner's Ineffective Assistance of Counsel Claims**

12       **A.    Ground One — Gregan's Representation**

13       In Ground One Petitioner asserts that trial counsel Gregan was ineffective because

14   he promised Petitioner a plea offer more favorable than the plea offer that his prior

15   counsel Volkmer had negotiated, which included up to 3.5 years' imprisonment, and that

16   after "months of delays and a lack of communication," Gregan presented Petitioner with

17   a plea offer for eight years' imprisonment.   (Doc. 1 at 6.)   After holding an evidentiary

18   hearing, the trial court rejected these claims.   (Doc. 11, Exs. C, K.)   The appellate court

19   affirmed the trial court's ruling.   (Doc. 11, Ex. O.)   As discussed below, Petitioner has not

20   shown that the state court's decision is based on an unreasonable determination of the

21   facts, or that it is contrary to or an unreasonable application of federal law.   28

22   U.S.C. § 2254(d).   Accordingly, he is not entitled to habeas corpus relief on the claims

23   asserted in Ground One.

24       **1.    Promise to Obtain a More Favorable Plea Offer**

25       Although a claim of ineffective assistance of counsel is a mixed question of law

26   and fact, *Lankford v. Arave*, 468 F.3d 578, 583 (9th Cir. 2006), the resolution of

27   Petitioner's claim that Gregan was ineffective for promising to obtain a more favorable

28   plea offer turns on a factual issue that the appellate court resolved against Petitioner.   (*See*

- 13 -

Doc. 11, Ex. O at 3.)   The record supports the state court's finding that Gregan did not unequivocally promise Petitioner that he would obtain a plea offer that would include a prison sentence of less than 3.5 years.  (Doc. 1 at 6; Doc. 11, Ex. O at 85.)   During the evidentiary hearing on post-conviction review, Gregan, Arvayo, and Petitioner testified about their meeting to discuss Gregan's representation of Petitioner.  (Doc. 11, Ex. C at 69, 93-93, 128-29.)   Arvayo and Petitioner testified that Gregan guaranteed them that he could obtain a plea offer that included a sentence of 1.5 years' imprisonment.  (*Id.* at 94, 132.)   Gregan testified that he believed he could obtain a plea offer that included less than 3.5 years' imprisonment, but that he did not promise that result.  (Doc. 11, Ex. C, at 84-85, 113, 165.)   He testified that he followed his standard practice in Petitioner's case, which included telling clients he could not promise results, only effort.  (*Id.* at 85.)

After observing Gregan, Arvayo, and Petitioner testify, the trial court credited Gregan's testimony.  *See Edwards v. Lamarque*, 475 F.3d 1121, 1126-27 (9th Cir. 2007) (concluding that the trial court, which observed counsel during trial, did not make an unreasonable determination of the facts and deferring to the trial court's rejection of trial counsel's assertion of inadequate performance).   On habeas corpus review, this Court may not "redetermine credibility of witnesses whose demeanor has been observed by the state trial court."  *Aiken v. Blodgett*, 921 F.2d 214, 217 (9th Cir. 1990) (citing *Lonberger*, 459 U.S. at 434).

Petitioner disagrees with the trial court's finding.  (Docs. 1, 12.)  He argues that "Gregan promised a better plea," and states that his allegation that Gregan promised a better plea offer is supported by "sworn affidavits." (Doc. 12 at 5.)  Petitioner does not cite the affidavits to which he is referring.  (*Id.*)  However, he is likely referring to several affidavits he attached to his Petition.   (Doc. 1 at 46-55, 60-63.)   These include Petitioner's affidavit (Doc. 1 at 46-49), and the affidavits of Arvayo (*Id.* at 50-52), Brown (*Id.* at 53-55), and post-conviction counsel Harriett Levitt (*Id.* at 60-63).  These affidavits were submitted to the superior court on post-conviction review in 2012.  These affidavits were before the trial court and the appellate court on post-conviction review and do not

constitute "clear and convincing evidence" to rebut the presumption that the state court's determination of this factual issue was correct. *See* 28 U.S.C. § 2254(e)(1) (providing that a state court's determination of a factual issue is "presumed to be correct" and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."). Although these affidavits lend support to Petitioner's assertion that Gregan promised a better plea offer, they were considered by the post-conviction court which also considered Gregan's testimony that he did not promise to obtain a better offer. "Where there are two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous." *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (citing *Amadeo v. Zant*, 486 U.S. 214, 226 (1988)).

Thus, the record supports the state court's finding that Gregan did not promise to obtain a more favorable plea offer from the State. Because this Court must defer to that finding, Petitioner's claim of ineffective assistance based on Gregan's alleged promise fails because Petitioner has not offered clear and convincing evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Lambert v. Blodgett*, 393 F.3d 943, 977, 978 (9th Cir. 2004) (stating that presumption of correctness applies to "state court findings of fact made in the course of resolving claims of ineffective assistance of counsel."); *see also Miller v. Thaler*, 714 F.3d 897, 902 (5th Cir. 2013) (presuming correct the trial court's finding that a defense attorney relayed the prosecutor's rejection of a plea counteroffer to the petitioner because there was no clear and convincing evidence to the contrary). "The presumption of correctness applies not only to express findings of fact, but also applies equally to unarticulated findings that are necessary to the state court's conclusions of mixed questions of fact and law." *Cooper*, 510 F.3d at 919 (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (applying the presumption of correctness to a credibility determination which was implicit in the court's rejection of the defendant's claim)).

Thus, the state court's finding that Gregan did not promise to obtain a more favorable plea offer is a reasonable determination of the facts, and is entitled to deference

under 28 U.S.C. § 2254(d)(2) and (e)(1).   Considering the state court's presumably correct finding that Gregan did not promise to obtain a better plea offer, which is supported by the record, Petitioner has not shown that Gregan's performance was deficient and, thus, has not met *Strickland's* first requirement.  *See Strickland*, 466 U.S. at 687.   Accordingly, Petitioner has not established that the state court's finding that Gregan's performance was not deficient is based on an unreasonable determination of the facts, or is contrary to, or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d).

### 2.       Gregan's Negotiation Strategy

In Ground Two, Plaintiff also challenges Gregan's negotiation strategy.  (Doc. 1 at 6.)  In his Reply, Petitioner expands this claim to allege that Gregan failed to inform the new prosecutor, Sosin, that the delay in responding the plea offer was Gregan's fault. (Doc. 12 at 5.)   The court of appeals determined that Gregan's strategy — to delay accepting the 3.5-year plea offer and wait for Bennik to make a better offer — was a legitimate trial strategy and was not deficient performance.  Petitioner has failed to show the appellate court's determination was based on an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of *Strickland*. *See* 28 U.S.C. § 22254(d).

"Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."  *Premo v. Moore*, 562 U.S. 115, 124 (2011).  There are "special difficulties in evaluating the basis for counsel's judgment [in the context of plea negotiations]: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial."  *Id*. at 125.  "[H]abeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."  *Id.* (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

Petitioner has not presented evidence sufficient to rebut the trial court's conclusion that Gregan believed that his bargaining position would strengthen over time because Bennink would not want to take the case to trial.  (Doc. 11, Ex. K at 3.)  The record supports the state court's determination.  Gregan's strategy failed when Sosin took over the case and refused to honor the plea offer for 3.5 years' imprisonment.  However, as the state court found, Gregan did not perform deficiently by advising Petitioner to delay in accepting the 3.5-year offer.  (Doc. 11, Exs. K, O.)  Gregan's advice was based on the charges against Petitioner, his experience as a defense attorney in Pinal County, his familiarity with Pinal County prosecutors, including Bennink, and his belief — based on those factors — that he could obtain a better plea offer from Bennink closer to trial. (Doc. 11, Ex. C 68, 70, 87); *see Premo*, 562 U.S. at 125 (stating that "an attorney often has insights borne of past dealings with the same prosecutor or court," that are relevant when assessing counsel's performance).

Additionally, Gregan, Bennink, and Brown testified that the practice in Pinal County was to leave plea offers open even after a stated expiration date.  (Doc. 11, Ex. C at 25, 60-61, 86-87.)  Indeed, the 3.5-year plea offer in this case was made after the expiration date (the second pretrial conference) that was stated on the face of the offer. (*Id.* at 25; Doc. 11, Ex. E.)  Bennink explained that the statement that the plea would expire at the second pretrial conference was standard language that he included in his plea offers, and that the deadline for Petitioner to accept the plea was "flexible." (Doc. 11, Ex. C at 25.)

Prosecutor Sosin, who upheld plea expiration dates, took over Petitioner's case from Bennink.  (*Id.* at 41.)  As the state court found, Gregan had no reason to expect that Sosin would take over the case.  (Doc. 11, Ex. K at 3.)  Additionally, although Sosin testified that she was familiar with Bennink's practices regarding plea offers, there is no evidence that she notified Gregan that she would withdraw the 3.5-year plea offer unless Petitioner accepted it by a certain date.  (Doc. 11, Ex. C at 88.)  Gregan testified that Sosin took over the case suddenly and "pulled the plea without notice."  (*Id.* at 89.)

Gregan testified that he "believ[ed]" he told Sosin that the delay in accepting the plea was not Petitioner's fault.  (Doc. 11, Ex. C at 74.)

Therefore, Petitioner has not shown that the state court's determination that Gregan's performance was not objectively unreasonable is based on an unreasonable determination the facts, or that it is contrary to or based on an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d).  Accordingly, Petitioner has not established a claim of ineffective assistance of counsel based on Gregan's strategy, including his alleged failure to tell the prosecutor that his delay strategy was not attributable to Petitioner.

Because the record supports the state court's finding that Gregan's performance was not deficient, the Court need not reach *Strickland's* prejudice prong.  *Strickland*, 466 U.S. at 697.  Moreover, even assuming Gregan's performance was deficient for advising Petitioner to delay in accepting the 3.5-year plea offer, Petitioner has not shown that he was prejudiced by that advice.  To show that prejudice resulted from the ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" that (1) he "would have accepted the earlier plea offer," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  *Frye*, 132 S. Ct. at 1409.

The record includes evidence that Petitioner expressed to each of his attorneys that he would not be satisfied with a plea offer that included a sentence in excess of 1.5 years. (Doc. 64-65, 81-82, 83, 132, 184, 190-91); *see Barnes v. Hammer*, 765 F.3d 810, 814 (8th Cir. 2014) (finding that the petitioner "did not turn down a legitimate plea offer due to incompetent advice" but instead "turned it down for a host of other personal reasons, including that he did not want to do jail time, and that he was trying to get a better deal for his friend").  Thus, Petitioner has not shown a reasonable probability that but for Gregan's alleged deficient performance he would have accepted the plea offer that included a 3.5-year prison sentence.

Therefore, Petitioner cannot establish a claim of ineffective assistance of counsel and, thus, cannot show that the state court's rejection of this claim is based on an unreasonable determination of the facts or that it is contrary to or based on an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d).

### 3.      Whether Gregan Abandoned Petitioner

In his Reply, Petitioner argues that Gregan "abruptly abandoned [him] after we were unable to give Gregan additional money . . . ."  (Doc. 12 at 2.)  Petitioner did not include this claim in his Petition.  (Doc. 1 at 6.)  The Court need not consider this argument because it was raised for the first time in Petitioner's reply.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (claim raised for first time in a reply will not be considered); *Lewis v. Witek*, 927 F. Supp. 1288, 1291 n.2 (C.D. Cal. 1996) (same).

Moreover, Petitioner did not present this specific claim to the trial and appellate courts on post-conviction review.  In his petition for post-conviction relief and his petition for review, Petitioner stated that after the case was set for trial, Gregan withdrew as counsel because Petitioner could not pay his fee to take the case to trial.  (Doc. 11, Ex. J at 4, Ex. N at 4.)  However, Petitioner did not specifically argue that Gregan was ineffective for withdrawing as counsel, or for abandoning him.  (Doc. 11, Exs. J, Ex. N.)  Because Petitioner did not fairly present his abandonment claim to the state courts, habeas corpus review of his claim would likely be technically exhausted and procedurally barred.  (Doc. 11, Exs. J, K, N, O); *see Teague v. Lane*, 489 U.S. 288, 297-99 (1989) (stating that a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claim to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims); Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted).

1    Even assuming this claim were properly before the Court, Petitioner has not

2    shown that Gregan was ineffective for withdrawing as counsel or that he abandoned

3    Petitioner. The record reflects that Gregan withdrew as counsel because Petitioner was

4    unable to pay his fee to take the case to trial. (Doc. 11, Ex. 49, 70.) Brown was

5    appointed to represent Petitioner. (*Id.* at 52.) Immediately thereafter, Gregan contacted

6    Brown about the case and gave him Petitioner's file. (*Id.* at 80-81.) Although Gregan

7    withdrew as counsel, the record reflects that he did not abandon Petitioner. Petitioner

8    was appointed new counsel and Gregan provided him with Petitioner's case file.

9    Therefore, Petitioner has not shown that Gregan's performance was deficient and thus he

10    has not established a claim of ineffective assistance based on Gregan's withdrawal as

11    counsel. *See Rios*, 299 F.3d at 805 (stating that "[f]ailure to satisfy either prong of the

12    *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at

13    688).

14    **B.    Ground Two — Volkmer's Representation**

15    In Ground Two, Petitioner claims that Volkmer failed to accurately convey the

16    2.5-year plea offer to him. (Doc. 1 at 7.) He also asserts that Volkmer did not physically

17    produce the 3.5-year plea offer and inaccurately told Petitioner that the plea offer was

18    stipulated at 3.5 years instead of capped at 3.5 years. (*Id.*) On post-conviction review,

19    the trial court rejected this claim of ineffective assistance of counsel and the appellate

20    court affirmed. (Doc. 11, Exs. K, O.) As discussed below, Petitioner has not shown that

21    the state court's resolution of this claim was based on an unreasonable determination of

22    the facts, or that it was contrary to or based on an unreasonable application of clearly

23    established federal law. *See* 28 U.S.C. § 2254(d).

24    As set forth above, a claim of ineffective assistance of counsel is a mixed question

25    of law and fact. *Lankford*, 468 F.3d at 583. However, the resolution of Ground Two

26    turns on a factual issue that the state court resolved against Petitioner, whether Volkmer

27    accurately conveyed both plea offers to Petitioner. (*See* Doc. 11, Exs. K, O at 2-3.) The

28    record supports the state court's finding that Volkmer accurately conveyed the plea

offers.  At the post-conviction hearing, Volkmer and Bennink testified that a two-year offer was made with a very short window.  (Doc. 11, Ex. C at 11, 175.)  Volkmer did not specifically recall whether he conveyed that offer to Petitioner.  (*Id.* at 175, 192.)  However, upon review of his notes, he believed he did.  (Doc. 11, Ex. C at 189.)  Additionally, a recorded telephone call from Petitioner to his mother on August 11, 2010, indicated that Petitioner was aware of the approximately two-year offer and that he had less than a week to accept it.  (Doc. 11, Ex. S; Doc. 11, Ex. C 125-26.)  During that conversation, Petitioner stated that "the Attorney came up with one of these for two years."  (Doc. 11, Ex. S at 2-3.)  Later during the conversation, Petitioner stated that he had to sign the agreement by his Monday court date.  (*Id.* at 3-4.)  After a long conversation with his mother during which she said don't "give up," "[d]on't sign, son," and to wait, he did not accept the plea.  (*Id.* at 5-8.)

The state courts' conclusion that Volkmer described the 3.5-year offer as including a sentence that was capped at 3.5 years' imprisonment is supported by the text of the written plea agreement.  (Doc. 11, Ex. E at 1-2.)  Additionally, during the post-conviction evidentiary hearing, Petitioner did not testify that Volkmer described the plea offer as including a "stipulated" term of 3.5 years' imprisonment.  (Doc. 11, Ex. C at 123-25.)  Although Petitioner testified that Volkmer did not state that the prison term was "capped," his testimony does not render the state court's determination of the facts unreasonable.  Rather, "[w]here there are two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous."  *Cooper*, 510 F.3d at 919 (citing *Amadeo*, 486 U.S. at 226).  Additionally, on habeas corpus review, this Court may not "redetermine credibility of witnesses whose demeanor has been observed by the state trial court."  *Aiken*, 921 F.2d at 217 (citing *Lonberger*, 459 U.S. at 434).

Petitioner has not offered clear and convincing evidence to rebut the presumption of correctness that applies to the state court's finding that Volkmer accurately conveyed the terms of the 2.5-year offer and the 3.5-year plea offer.  *See* 28 U.S.C. § 2254(e)(1); *Lambert*, 393 F.3d at 977, 978 (stating that presumption of correctness applies to "state

court findings of fact made in the course of resolving claims of ineffective assistance of counsel."); *Miller*, 714 F.3d at 902 (presuming correct the trial court's finding that a defense attorney relayed the prosecutor's rejection of a plea counteroffer to the petitioner because there was no clear and convincing evidence to the contrary).

Therefore, the state court's finding that the Volkmer accurately conveyed the plea offers to Petitioner is a reasonable determination of the facts, and is entitled to deference under 28 U.S.C. § 2254(d)(2) and (e)(1).   Considering the state court's presumably correct finding that Volkmer accurately conveyed the plea offers, Petitioner's has not shown that Volkmer's performance was deficient and, thus, has not met *Strickland's* first requirement.   *See Strickland*, 466 U.S. at 687.   Accordingly, Petitioner has not established that the state court's finding that Volkmer's performance was not deficient is based on an unreasonable determination of the facts, or is contrary to, or an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)

Because the record supports the State court's finding that Volkmer's performance was not deficient in failing to accurately convey the plea offers, the Court need not reach *Strickland's* prejudice prong.   *Strickland*, 466 U.S. at 697.   However, assuming that Volkmer rendered deficient performance, Petitioner has not established prejudice.  As set forth above, to show that prejudice "where a plea offer has lapsed or been rejected because of counsel's deficient performance," a petitioner must demonstrate a "reasonable probability" that he "would have accepted the earlier plea offer," and "the plea would have been entered."  *Frye*, 132 S. Ct. at 1409.   The record indicates that Petitioner rejected the various plea offers because he wanted a sentence that was similar to the sentence co-defendant Botello received.   (Doc. 11, Ex. C at 125, 132, 184, 195.) Petitioner testified that Volkmer told him it "wasn't getting better than three-and-a-half" and that Volkmer told him to accept the plea offer.  (*Id.* at 129, 142.)  Petitioner stated that "that's when he told [Volkmer he was] looking into hiring a new lawyer."  (*Id.*) Volkmer also testified that Petitioner told him if could not get him a better deal, he would hire another lawyer who could.  (*Id.* at 129, 178, 191.)  Petitioner hired Gregan to obtain

a better offer, expressed his unhappiness with the 3.5-year offer, and never indicated that he had wanted to accept the 3.5 year offer.  (*Id.* at 70, 80-83.)

**V.     Conclusion**

Because Petitioner has not shown that the state courts' rejection of his claims of ineffective assistance of counsel was based on an unreasonable determination of the facts, or that it contrary to or based on an unreasonable application of clearly established federal law, the Court recommends that the Petition for Writ of Habeas Corpus be denied. *See* 28 U.S.C. § 2254(d).

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

1    Failure to file timely objections to any factual determination of the Magistrate

2  Judge may be considered a waiver of a party's right to appellate review of the findings of

3  fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

4  *See* Fed. R. Civ. P. 72.

5    Dated this 2nd day of April, 2015.

6

7

8  _____

9              Bridget S. Bade

10            United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28